UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, ) ) ) | |
| Plaintiff, ) | CIVIL ACTION NO. |
| ) | |
| v. ) | C O M P L A I N T |
| ) | |
| OFFICEMAX INCORPORATED, ) | JURY TRIAL DEMAND |
| ) | |
| Defendant. ) | |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of retaliation, and to provide appropriate relief to Charging Party Hector Cordero who was adversely affected by such practices.

As alleged with greater particularity below in paragraphs ten (10) through thirty-five (35), Plaintiff, the Equal Employment Opportunity ("EEOC" or the "Commission"), alleges that Charging Party Hector Cordero ("Charging Party") was subjected to a pattern of ongoing retaliatory conduct by OfficeMax Incorporated ("OfficeMax") after he complained about racially discriminatory treatment.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and

1

    (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3) ("Title VII") and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the United States District Court for the Middle District of Florida, Tampa Division therefore making this venue proper.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission, is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII, and is expressly authorized to bring this action by Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant OfficeMax has continuously been a Delaware corporation doing business in the State of Florida and within the City of Sarasota, and has continuously had at least 15 employees.

5. At all relevant times, Defendant OfficeMax has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## CONDITIONS PRECEDENT

6. More than thirty days prior to the institution of this lawsuit, Charging Party filed a charge with the Commission alleging violations of Title VII by OfficeMax.

7. Prior to the institution of this lawsuit, the Commission issued a Letter of Determination finding reasonable cause to believe that Charging Party was retaliated

against when he objected to and/or opposed the racially discriminatory actions of his supervisor.

8. Prior to the institution of this lawsuit, the Commission attempted to effect OfficeMax's voluntary compliance with Title VII through informal methods of conciliation, conference and persuasion within the meaning of Section 706(b) of Title VII, 42 U.S.C. Sections 2000e-5(b).

9. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF FACTS

10. OfficeMax owns and operates numerous retail stores in the state of Florida including Stores #155 and #1435, located in Sarasota, Florida.

11. Between approximately May 11, 2007 and October 30, 2007, Charging Party Hector Cordero was employed by OfficeMax as a Sales Associate at Store #155 until he voluntarily left for new employment.

12. On or about December 22, 2008, Charging Party Cordero was rehired by Office Max as a Sales Associate for Store #1435.

13. At all times relevant to the complaint, Gerry Fish was the Store Manager of OfficeMax's Store #1435.

14. OfficeMax Store #1435 is open to the public Monday through Friday from 8 a.m. to 9 p.m., Saturdays from 9 a.m. to 8 p.m. and Sundays 11 a.m. to 6 a.m.

15. At their initial meeting in December 2008, Store Manager Fish gave Cordero the strong impression that he was uncomfortable with Cordero's presence, including by trying to avoid shaking Cordero's hand.

16. Following his rehire:

    a. Cordero often observed Store Manager Fish angrily staring at him for no reason;

    b. Store Manager Fish often referred to Charging Party Cordero as a "C" employee and referred to non-Hispanic employees as "A" employees;

    c. Store Manager Fish routinely made unwarranted comments to Charging Party Cordero such as "selling was not in [his] DNA;" and

    d. Cordero learned that Fish expressed that he did not want to hire Cordero because the Store's predominant client base was non-Hispanic.

17. In or around May 2009, Charging Party Cordero obtained permission to take vacation time off from work from June 13, 2009 to June 25, 2009.

18. Upon returning from his vacation, Charging Party Cordero learned that he was taken off the schedule and was told to speak with Store Manager Fish for additional information.

19. When Charging Party Cordero spoke with Fish the following day, notwithstanding OfficeMax's prior approval of his vacation and Fish's knowledge that Cordero was on an approved vacation, Cordero learned that he was terminated for being improperly absent from work.

20. On or about June 26, 2009, Charging Party contacted OfficeMax's Ethics and Compliance Employee Hotline and complained that he was treated unfairly and terminated by Store Manager Fish based on his race, Hispanic.

21. Following an investigation, Store Manager Fish was directed to immediately rehire Charging Party.

22. However, in retaliation for Charging Party's complaint, Store Manager Fish prepared a unwarranted Performance Improvement Plan ("PIP") for Charging Party on July 13, 2009.

23. Charging Party returned to work on July 14, 2009.

24. On July 14, 2009, Fish placed Charging Party Cordero on the PIP on the false premise that his sales performance was poor.

25. As a result, Charging Party was required to endure unwarranted weekly "sales tests," discussions and role-playing scenarios.

26. Store Manager Fish did not treat non-Hispanic employees in the same manner.

27. In addition to the PIP, following his reinstatement, Store Manager Fish engaged in retaliatory conduct designed to intimidate and upset Charging Party Cordero and to generate reasons to fire him and/or cause him to resign including, but not limited to:

   a. Engaging in disparate disciplinary practices;

   b. Falsely accusing Cordero of violating work rules;

   c. Causing a reduction in Cordero's work hours;

   d. Causing Cordero to work on shifts when he worked so he could treat him in a hostile, intimidating manner;

   e. Subjecting Cordero to mean and offensive comments; and

   f. Assigning Cordero the worst, most difficult jobs in the store.

28. Store Manager Fish also directed other OfficeMax managers to give Charging Party unwarranted verbal counselings, to write unwarranted disciplinary reports and to "ride" him.

29. Charging Party Cordero objected to and complained about Store Manager Fish's conduct in August 2009 to OfficeMax's Human Resources Department.

30. Notwithstanding his objections and complaints, the retaliatory conduct continued.

31. Charging Party Cordero filed an administrative charge of discrimination with the EEOC in January 2010 alleging race discrimination and retaliation by Store Manager Fish and other OfficeMax managers.

32. Notwithstanding his EEOC complaint, the retaliatory conduct continued.

33. Charging Party Cordero continued to object to and complain about Store Manager Fish's conduct and the conduct of other OfficeMax managers in February, March, April, and June 2010.

34. Notwithstanding Charging Party Cordero's numerous objections to the discriminatory and retaliatory treatment to which he was subjected by Store Manager Fish and by other OfficeMax managers at Fish's direction, OfficeMax took no corrective action.

35. Charging Party's resignation on October 29, 2010.

36. As a result of the foregoing retaliatory conduct, Charging Party Cordero suffered damages.

## STATEMENT OF CLAIMS

37. On a continuing basis since at least June, 2009, Office Max has engaged in unlawful employment practices at Store # 1453, its Sarasota, Florida facility, in violation of

Section 704 of Title VII, 42 U.S.C. § 2000e-3(a) by retaliating against Charging Party for repeatedly complaining about and/or opposing the unlawful employment practices.

38. The effect of the practices complained of in paragraphs ten (10) through thirty-five (35) above has been to deprive Charging Party of equal employment opportunities and otherwise adversely affect his status as an employee, because of his opposition to discriminatory treatment.

39. The unlawful employment practices complained of in paragraphs ten (10) through thirty-five (35) above were intentional and caused Charging Party to suffer emotional distress, including but not limited to emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation and/or physical injuries.

40. The unlawful employment practices complained of in paragraphs ten (10) through thirty-five (35) above were done with malice or with reckless indifference to the federally protected rights of Charging Party.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining OfficeMax, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in retaliating against employees that object to or oppose an unlawful practice such as racial discrimination.

B. Order OfficeMax to institute and carry out policies, practices, and programs which provide equal employment opportunities for employees that object to or oppose racial

discrimination, and which eradicate the effects of its past and present unlawful employment practices.

C. Order OfficeMax to make whole Charging Party, by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraphs ten (10) through thirty-five (35) above, in amounts to be determined at trial.

D. Order OfficeMax to make whole Charging Party by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of in paragraphs ten (10) through thirty-five (35) above, in amounts to be determined at trial.

E. Order OfficeMax to pay Charging Party punitive damages for its malicious and reckless conduct described in paragraphs ten (10) through thirty-five (35) above, in amounts to be determined at trial.

F. Grant such further relief as the Court deems necessary and proper in the public interest.

G. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Respectfully Submitted,

P. DAVID LOPEZ
General Counsel

JAMES L. LEE
Deputy General Counsel

8

GWENDOLYN Y. REAMS
Associate General Counsel

Equal Employment Opportunity
Commission
131 M Street N.E.
Washington, D.C. 20507

ROBERT E. WEISBERG
Regional Attorney

KIMBERLY McCOY-CRUZ
Supervisory Trial Attorney

*GREGORY L. MCCLINTON*

AARRIN GOLSON
Senior Trial Attorney
Florida Bar No. 892491
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Miami District Office
One Biscayne Tower
2 South Biscayne Blvd., Suite 2700
Miami, Florida 33131
Tel: (305) 808-1783
Fax: (305) 808-1835
Email: aarrin.golson@eeoc.gov

9